UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TERRANCE MINEAU,

    Plaintiff,

    v.                                  Case No. 21-C-230

ATALIE, et al.,

    Defendants.

## SCREENING ORDER

Terrance Mineau, who is currently serving a state prison sentence at the Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This matter comes before the Court on Mineau's motion for leave to proceed without prepayment of the filing fee and for screening of the complaint.

### MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Mineau requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Mineau filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and the Court waived the initial partial filing fee. Dkt. Nos. 4 & 6. The Court instructed Mineau to file a letter with the clerk's office within 21 days if he wanted to voluntarily dismiss the case to avoid the possibility of incurring a strike under 28 U.S.C. § 1915(g). Dkt. No. 6 at 2. The Court explained that, upon expiration of the specified

time, the Court would review the complaint to determine whether the action is frivolous, malicious, or fails to state a claim upon which relief can be granted. *Id*.

More than twenty-one days have passed and Mineau has not voluntarily dismissed this case. Thus, the Court will grant his motion for leave to proceed without prepayment of the filing fee and screen the complaint.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

At the relevant time, Mineau was an inmate at the Brown County Jail. Dkt. No. 1. The defendants worked at the jail: Todd Delain was sheriff; Heidi Michael was jail administrator; Atalie and Cindy were mental health counselors; and Abegglen, Ramirez, Rhoades, Schartner, Lyendecker, West, Dimmer, and Bergh were correctional officers. *Id*. at 2. Mineau also names the Brown County Jail as a defendant in this case. *Id*.

On September 10, 2019, Atalie asked about a text that Mineau had recently sent to his parole agent. *Id*. at 3. The text included instructions to "send a power of attorney to the Menominee Tribe concerning [] tribal burial arrangement." *Id*. Atalie thought Mineau was suicidal and asked if he planned to hurt himself. *Id*. Mineau responded that he had no intentions of self-harming. *Id*. According to Mineau, he was recently re-incarcerated due to parole revocation and did not have family that could be contacted in case of his imminent death; he explains that the text was not a suicide letter. Atalie nevertheless declared that she thought he was going to harm himself and ordered suicide watch. *Id*. Mineau believes that Atalie did this because she "shows an obvious dislike of [him]" based on incidents in the past when he "questioned her mental health opinions" and complained about his medications. *Id*. at 4.

Mineau alleges that, on the way to suicide watch, he explained to Lyendecker that he did not make any suicide threats. *Id*. Mineau also asked for a copy of "the rules" for placing inmates

3

on suicide watch. *Id*. at 4. Lyendecker responded by saying that a copy of the rules was available on Fox pod but there was nothing he could do once a mental health counselor determines that an inmate should be placed on suicide watch. *Id*.

The following day, on September 11, 2019, Cindy went to Mineau's suicide watch cell to conduct a routine 24-hour evaluation. *Id*. Mineau again explained the context of the text and stated that it was not a suicide letter; he stated that he did not plan to self-harm. *Id*. Mineau alleges that Cindy acted as though she did not understand the explanation and that she did not ask any follow up questions. *Id*. He claims Cindy abruptly ended the evaluation, leading Mineau to believe that she had predetermined that he would stay on suicide watch. *Id*. Mineau believes that Cindy was intending to punish him by keeping him on suicide watch. *Id*. He states that there was "no logical reason" for his being there. *Id*.

Mineau alleges that the condition of his suicide watch cell was "appalling" and "extreme"—he describes the cell as a sensory "deprivation chamber." *Id*. at 4-5. He states that there was a "thick rubber shield" surrounding the walls and door, which functioned as a noise barrier. *Id*. at 5. There was no sink or toilet. *Id*. There was only a hole in the floor, located right next to the bed, and urine splashed on the bed every time he used it. *Id*. He asked to speak to the mental health counselors, but they would only speak to him during the 24-hour evaluations, making him feel isolated and hopeless. *Id*. The bed was only three inches off the ground and the blanket was only three feet by four feet. *Id*. He alleges he asked for another blanket, but the request was ignored. *Id*. He claims that the jail had an ant infestation. *Id*. Mineau also states that he couldn't sleep for the entire five days he was on suicide watch because of pain from a knee surgery he had in 2018, degenerative back disease, and shoulder issues. *Id*. Mineau indicates that he spoke to several officers about these issues but they "treat you indifferently." *Id*.

4

Mineau alleges that, on September 13, 2019, about two days into suicide watch, he had a mental breakdown. *Id*. He claims he asked Lyendecker and Dimmer to see the "rulebook" regarding placing an inmate on suicide watch, and they responded that the jail did not have one. *Id*. Mineau then asked Rhoades and Schartner to release him from suicide watch, and they responded that only the sheriff or the administrative captain has authority to do that. *Id*. Mineau states that he could no longer talk to the mental health counselors about his request for release from suicide watch because he was so angry that he "could only yell verbal threats." *Id*. He states that he received six major conduct reports that day because of the issue. *Id*.

At around 11:00 p.m. that night, on September 13, 2013, Dimmer ordered Abegglen to give Mineau some water. *Id*. Mineau states that he didn't receive the water until 30 minutes later, at around 11:30 p.m. *Id*. Mineau states that Abegglen "ignored" Dimmer's order and a different officer, Hambly (not a defendant), was the individual who brought the water. *Id*. at 5-6.

Mineau alleges that, several hours later, on September 14, 2019, at around 2:00 a.m., he had a heat stroke, lost consciousness, and fell on his shoulder. *Id*. at 6. He believes he lost consciousness for about 30 minutes. *Id*. Following the incident, he tried to use the intercom several times to communicate with correctional staff. *Id*. At around 4:30 a.m., Ramirez finally answered the intercom and gave him some water. *Id*. Mineau believes that Abegglen told Ramirez not to promptly give him water because of "several arguments" they'd had in the past. *Id*.

The following day, on September 15, 2019, Mineau asserts he was finally allowed to talk to the mental health counselors to explain that he did not make any threats or attempts to harm himself. *Id*. Mineau states that these individuals knew about his mental disorders and they could have come to talk to him "at any time" to release him from suicide watch. *Id*. For relief, Mineau seeks monetary damages and several injunctions. *Id*. at 7.

# The Court's Analysis

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). "An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). He or she "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Mineau asks to proceed with the following claims: (1) Atalie and Cindy "placed [him] on suicide watch against [his] will as a disciplinary measure;" (2) Michael, Rhoades, Schartner, Lyendecker, West, Bergh, and Dimmer "refused to render aid to a victim of a crime" when they failed to intervene regarding his involuntary placement on suicide watch; and (3) Abegglen and Ramirez imposed cruel and unusual conditions-of-confinement. Dkt. No. 1 at 3.

The Court will dismiss this complaint for failure to state a claim upon which relief can be granted. First, Mineau does not have constitutional claims with respect to the allegations against Atalie, Cindy, Michael, Rhoades, Schartner, Lyendecker, West, Bergh, and Dimmer. *See, e.g.*, *Jones v. Sternes*, 124 F. App'x 448, 449 (7th Cir. 2005) (affirming the district court's conclusion that a plaintiff failed to state a claim upon which relief can be granted when he alleged that he was

"involuntarily placed in a psychiatric unit and on suicide watch"). Numerous district courts have explained that "[t]emporary placement on suicide watch, when not necessary, does not implicate a liberty interest protected by the Due Process Clause, nor does it amount to cruel and unusual punishment under the Eighth Amendment." *See Bradley v. Jones*, No. 20-CV-00139-RJD, 2020 WL 3412948, at *5 (S.D. Ill. June 22, 2020) (quoting *Jones v. Lee*, No. 09-CV-11283, 2012 WL 683362, at *4 (E.D. Mich. Mar. 2, 2012); *Span v. Melvin*, No. 18-1078, 2018 WL 2944152, at *2 (C.D. Ill. June 12, 2018) (suicide watch for 28 days did not violate constitution); *Starks v. Couch*, No. 08-cv-407-GPM, 2009 WL 331357, at *2 (S.D. Ill. Feb. 11, 2009) (suicide watch for 7 days did not violate constitution). Mineau alleges that Atalie, Cindy, Michael, Rhoades, Schartner, Lyendecker, West, Bergh, and Dimmer were either involved in, or refused to intervene to prevent, his involuntarily placement on suicide watch for five days in September 2019. Mineau's temporary placement on suicide watch does not violate the Eighth Amendment or the Fourteenth Amendment.

Second, Mineau also fails to state a claim with respect to Delain and the Brown County Jail. Mineau does not make any factual or legal allegations regarding Delain. His role as a supervisor at the jail is not enough to impose §1983 liability. *Burks*, 555 F.3d at 593 (Section 1983 does not establish a system of vicarious responsibility). Further, the Brown County Jail is not a suable entity under §1983. *See Gambrell v. Brown Cty. Jail Health Servs.*, No. 15-C-1146, 2015 WL 6873229, at *2 (E.D. Wis. Nov. 9, 2015) (holding that Brown County Jail is neither a "suable entit[y] under § 1983" nor a "legal entit[y] separate from the county government and therefore not subject to suit"). Mineau does not have claims against Delain and the Brown County Jail.

Finally, Mineau does not allege enough facts from which the Court can reasonably infer that Abegglen and Ramirez were deliberately indifferent towards unconstitutional conditions-of-

confinement. To state a claim under the Eighth Amendment, Mineau must allege that Abegglen and Ramirez (1) imposed conditions that were so adverse that they deprived him "of the minimal civilized measure of life's necessities" and (2) acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). "The minimal civilized measure of life's necessities" include lack of heat, clothing, food, and sanitation. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773.

"Extreme deprivations are required to make out a conditions-of-confinement claim." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and [t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* "[T]he aggregate effect of a multitude of individual conditions may constitute a violation even if each individual condition could not establish a violation standing on its own." *Id*. at 1052. This only occurs, however, when the conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id*. "The core issue is whether the conditions deprived the plaintiff of a 'minimal civilized measure of life's necessities.'" *Id*.

Mineau alleges that Abegglen made him wait 30 minutes to get water on September 13, 2019; and that Ramirez made him wait 2 hours to get water on September 14, 2019. Alone, neither of these allegations are "extreme" enough to rise to the level of a constitutional violation. Jail staff are busy, and inmates must sometimes wait for items they have requested. Two hours is not an

unreasonable amount of time to wait. Therefore, Mineau has failed to state a conditions of confinement claim against Abegglen and Ramirez on this basis.

Mineau alleges other ways in which the conditions of his confinement were unconstitutional, including an ant infestation in his cell, the lack of a toilet in his cell, and the lack of light and noise effectively turned the cell into a "sensory deprivation" cell. The Court need not address whether the conditions of which Mineau complains were so adverse that they deprived him "of the minimal civilized measure of life's necessities" because Mineau does not allege that he notified Abegglen or Ramirez about those conditions or explain how they were deliberately indifferent toward those conditions. Under §1983, individuals will be liable for damages only if they were personally involved in the alleged constitutional violation. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Mineau therefore does not state a conditions-of-confinement claim against Abegglen and Ramirez, and the Court will dismiss this complaint for failure to state a claim upon which relief can be granted.

The Court will give Mineau an opportunity to file an amended complaint to state a claim upon which relief can be granted. If Mineau wishes to proceed with this lawsuit, he must file an amended complaint that (1) explains in detail the specific conditions of his confinement that amounted to cruel and unusual punishment; (2) identifies the individual (or individuals) who he notified about those conditions-of-confinement; and (3) explains what each individual (or individuals) said or did to show deliberate indifference towards those conditions-of-confinement. In other words, Mineau must clearly set forth the who, what, when, and where of what allegedly occurred. If he does not know the names of the individuals responsible for the complained of conduct, he may use John and Jane Doe placeholders in his amended complaint, with the understanding that he will need to conduct discovery to identify the names of the defendants. An

amended complaint must be filed within thirty days of the date of this order. Failure to file an amended complaint within this time period may result in the dismissal of this action.

Mineau is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If an amended complaint is received, it will be screened pursuant to 28 U.S.C. § 1915A.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim**.** The plaintiff may file an amended complaint that complies with the instructions in this order **within 30 days of the date of this order**. If the plaintiff files an amended complaint, the Court will screen the amended complaint as required by 28 U.S.C. §1915A. If the plaintiff does not file an amended complaint, the Court may dismiss this case.

**IT IS FURTHER ORDERED** that the Clerk's office mail the plaintiff a blank prisoner amended complaint form and a copy of the guide entitled "Guide to Filing Prisoner Complaints Without a Lawyer in the United States District Court for the Eastern District of Wisconsin," along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of the plaintiff shall collect from his institution trust account the **$350.00** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If the plaintiff is transferred to another institution, the transferring institution shall forward a copy of this Order along with the plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the plaintiff is confined.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this 10th day of May, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge